IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| SHANE HARRINGTON; MELTECH, INC.; and MIDWEST GIRLS CLUB, <br><br> Plaintiffs, <br><br> vs. <br><br> SEWARD COUNTY, NEBRASKA, a municipal entity, <br><br> Defendant. | 4:15-CV-3068 <br><br> MEMORANDUM AND ORDER |

The plaintiffs, Shane Harrington, Meltech, Inc., and Midwest Girls Club (collectively, "Harrington")[1], have sued the defendant, Seward County, for alleged constitutional and state law violations. The County moves to dismiss Harrington's complaint under Fed. R. Civ. P. 12(b)(1) and (12)(b)(6). For the reasons discussed below, the County's motion will be granted.

BACKGROUND

Harrington's allegations are briefly summarized as follows. In April 2015, Harrington sought out a location for an adult entertainment venue in Seward County, Nebraska. As part of this process, Harrington allegedly spoke with the County's zoning administrator, who, Harrington claims, encouraged him to purchase a building in a remote area of the county. Filing 57 at 1. Soon thereafter, Harrington entered into an option contract for the purchase of the building. His purchase option was conditioned on receiving necessary approvals from the County, and provided for a July 15, 2015 closing date. Filing 57 at 3; filing 57-2 at 26. That date, however, would be "automatically extended" to accommodate the County's review—but any extensions beyond September 15 required the express permission of the seller. Filing 57-2 at 26.

Harrington's proposed adult entertainment juice bar was located in a "C-2 Highway Commercial District," which—pursuant to the zoning ordinance in effect at that time ("the 2007 ordinance")—expressly excluded adult entertainment venues. *See* filing 57-4 at 69. But, Harrington says, the zoning administrator assured him that the respective powers would approve

---

[1] Harrington owns Meltech, Inc. and Midwest Girls Club. Filing 57 at 13-14.

an application for rezoning if submitted. So, on or around May 1, 2015, Harrington submitted applications to the Seward County Commissioners to initiate a two-step process to secure approval for the project. Pursuant to this process, Harrington (1) petitioned the commission to rezone the subject property from C-2 highway commercial to I-1 industrial (which conditionally permitted adult establishments), and (2) sought a conditional use permit in the event that the commission approved the rezoning request. Filing 57 at 1-2; filing 57-2 at 10.

Harrington alleges that from May to October 2015, the County intentionally delayed his application and held "secret meetings" on the proposal. *See* filing 57 at 2. Then, in September—prior to any adjudication on Harrington's requests—the County adopted a new zoning resolution ("the 2015 ordinance") which further regulates adult establishments.[2] *See*, filing 57 at 2; filing 57-3. Under the 2015 ordinance, adult entertainment venues are now permitted by right in C-2 highway commercial districts, thereby eliminating the need for Harrington's rezoning request. Filing 57-3 at 10. But the ordinance includes regulations not previously included in the 2007 ordinance, such as a prohibition on alcohol, and certain restrictions pertaining to the touching of semi-nude dancers. *See* filing 57-3 at 8-10. Overall, Harrington contends, the 2015 ordinance was "specifically designed to prohibit Plaintiff's [sic] from opening and operating the juice bar[,]" and otherwise "criminaliz[es] and regulat[es] Adult Establishments in an unconstitutional and unprecedented manner." Filing 57 at 2.

Harrington claims that as a result of the County's actions, he was "required to relinquish [his] purchase option for the subject property." Filing 57 at 2. He attacks several provisions of the two ordinances on constitutional grounds, and claims, among other matters, that the County deprived him of property without due process of law. He seeks declaratory and monetary relief.

## STANDARD OF REVIEW

A complaint must set forth a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This standard does not require detailed factual allegations, but it demands more than an unadorned accusation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint need not contain detailed factual allegations, but must provide more than labels and conclusions; and a formulaic recitation of the elements

---

[2] To be clear: the County did not rewrite and replace its entire zoning ordinance. Rather, the "2015 ordinance" as referred to herein amends the 2007 ordinance with respect to adult establishments only. *Compare* filing 57-3, *with* filing 57-4.

of a cause of action will not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). For the purposes of a motion to dismiss a court must take all of the factual allegations in the complaint as true, but is not bound to accept as true a legal conclusion couched as a factual allegation. *Id.*

And to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must also contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Iqbal,* 556 U.S. at 678. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not shown—that the pleader is entitled to relief. *Id.* at 679.

Determining whether a complaint states a plausible claim for relief will require the reviewing court to draw on its judicial experience and common sense. *Id.* The facts alleged must raise a reasonable expectation that discovery will reveal evidence to substantiate the necessary elements of the plaintiff's claim. *See Twombly,* 550 U.S. at 545. The Court must assume the truth of the plaintiff's factual allegations, and a well-pleaded complaint may proceed, even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely. *Id.* at 556.

When deciding a motion to dismiss under Rule 12(b)(6), the Court is normally limited to considering the facts alleged in the complaint. If the Court considers matters outside the pleadings, the motion to dismiss must be converted to one for summary judgment. Fed. R. Civ. P. 12(d). However, the Court may consider exhibits attached to the complaint and materials that are necessarily embraced by the pleadings without converting the motion. *Mattes v. ABC Plastics, Inc.,* 323 F.3d 695, 697 n.4 (8th Cir. 2003). Documents necessarily embraced by the pleadings include those whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading. *Ashanti v. City of Golden Valley,* 666 F.3d 1148, 1151 (8th Cir. 2012). The Court may also take notice of public records. *Levy v. Ohl,* 477 F.3d 988, 991 (8th Cir. 2007).

## ANALYSIS

Harrington's amended complaint contains eleven causes of action for alleged constitutional and state law violations. These claims, generally speaking, fall into one of two categories: (1) challenges to specific provisions of the 2007 and 2015 ordinances, and (2) challenges to the County's processing of Harrington's rezoning and conditional use applications. Specifically, Harrington alleges that the County's zoning ordinances violate the First, Fourteenth, and Twenty-First Amendments, and that the 2015

ordinance is an unconstitutional bill of attainder and ex post facto law. *See* filing 57 at 22-26, 29, 30. Further, regarding his zoning applications, Harrington alleges that the County improperly delayed adjudication of his requests, held secret meetings without proper notice, accepted false and misleading evidence at public meetings, and failed to follow procedures set forth in the 2007 ordinance. Ultimately, Harrington says, he was forced to relinquish his property option without due process or just compensation, and in violation of Nebraska's Open Meetings Act, Neb. Rev. Stat. § 84-1407 *et seq*. Filing 57 at 2, 26-29, 31.

### A. THE 2007 AND 2015 ORDINANCES

As noted above, Harrington asserts various constitutional challenges to the County's 2007 and 2015 zoning ordinances. The County urges dismissal, raising separate yet related arguments regarding standing. Specifically, with respect to the 2007 ordinance, the County argues that Harrington's claims are moot, noting that the relevant provisions of that ordinance were replaced in 2015. Filing 59 at 7. Further, it argues, because there is no indication that a ruling against the 2007 ordinance would redress the injuries alleged, there is no justiciable case or controversy. Filing 59 at 14. Next, with respect to the 2015 ordinance, the County contends that because Harrington no longer has an option to purchase property, he has "failed to show that [he is] at imminent risk of suffering an injury." Filing 59 at 14-15. Harrington disputes these points, citing his 6-month option contract, "numerous violations of [the] 2007 zoning resolution", and the purported "promises" of the county official regarding the viability of his applications. *See* filing 60 at 2.

### 1. STANDING

Federal courts have subject-matter jurisdiction only over cases in which the plaintiff "satisf[ies] the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). In other words, federal courts have no jurisdiction over cases in which the plaintiff lacks standing to bring the complaint. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Standing has three components. First, plaintiffs must show that they have suffered an injury-in-fact that is both concrete in nature and particularized to them. *Allen v. Wright*, 468 U.S. 737, 755 (1984). Second, the injury must be fairly traceable to defendants' conduct. *Id.* at 757. Third, the injury must be redressable— relief "must be 'likely' to follow from a favorable decision." *Id*.

Thus, in the context of zoning, the claimant "must allege specific, concrete facts demonstrating that the challenged practices harm him, and that he personally would benefit in a tangible way from the court's

intervention." *Warth*, 422 U.S at 508. The plaintiff need not have a "present contractual interest in a particular project." *Id.* at 508 n.18. But the plaintiff must allege facts from which it reasonably could be inferred that, absent the restrictive zoning ordinance, "there is a substantial probability that [he] would have been able to purchase or lease in" the area subject to the ordinance, "and that, if the court affords the relief requested, the asserted inability of [the plaintiff] will be removed." *Id.* at 503.

Applying these principles, the Court concludes that Harrington lacks standing to challenge either the 2007 or 2015 ordinances. Accordingly, for the reasons discussed below, counts 1-6 and 9-10 will be dismissed without prejudice. The Court will address the respective ordinances in reverse order.

### *(i) 2015 Ordinance*

Harrington challenges several provisions of the 2015 zoning ordinance which, he claims, are constitutionally deficient. Specifically, Harrington alleges that the 2015 ordinance "criminalize[s] nudity, masturbation, and sexual contact between consenting adults" in violation of his "expressive" and "intimate" association rights. Filing 57 at 16-19. He further contends that a provision requiring adult venues to close from 12:00 a.m. to 6:00 a.m. constitutes an unlawful prior restraint, and that provisions restricting the touching of semi-nude dancers violate the Freedom of Speech and Association Clauses of the First Amendment. Filing 57 at 19-20. Harrington also takes issue with certain terms in the ordinance—such as "adult lounge," "semi-nude," "pubic area," and "specific sexual activities"—which he argues are vague and overbroad. Filing 57 at 22-26. And finally, Harrington contends that the 2015 resolution amounts to an unconstitutional bill of attainder and ex post facto law, and that the ordinance, which "criminalizes" the possession of alcohol, operates in violation of the Twenty-First Amendment. *See* filing 57 at 29-31.

Less clear, however, is the nature and extent of Harrington's purported injuries. He does not, for example, allege to have been denied a permit or variance under the 2015 ordinance, or suggest an ongoing intent to apply for such permits. Nor does he allege an inability to partake in constitutionally permissible conduct in fear of sustaining a direct injury as a result of the law's operation or enforcement. *See Phelps-Roper v. City of Manchester*, 697 F.3d 678, 687 (8th Cir. 2012). Rather, Harrington's injuries seemingly trace to the loss of his option contract, which he purportedly relinquished "because of the unconstitutional new zoning amendments that were specifically adopted to stop Plaintiffs from operating a juice bar with nude dancing[.]" Filing 60 at 3. In advancing this argument, Harrington implies (1) that the option contract was still in force at the time the County adopted the 2015

- 5 -

ordinance, and (2) that the he would have exercised his purchase option but-for the County's conduct.

But any causal connection between these events—that is, the loss of the option contract and the adoption of the ordinance—is undermined by the exhibits attached to Harrington's complaint. Indeed, Harrington's option contract provided a July 15, 2015 closing date, which would be "automatically extended" in the event that his zoning applications remained pending. Filing 57-2 at 26. But the contract also provided that such extensions would not exceed September 15, 2015, "unless permission [was] given by seller." Filing 57-2 at 26. Here, it is uncontested that Harrington's zoning applications remained pending as of September 15. And nowhere does Harrington allege that the seller permitted further extensions beyond that date. So, based on the terms of the operative agreement, and the facts alleged in the amended complaint, it is clear that Harrington's purchase option expired on September 15, 2015.

And therein lies the problem: as the County points out, the 2015 ordinance was approved and went into effect *after* September 15. Thus, based on the facts alleged, it appears that Harrington's purported loss of the option contract was based not on the substance of the 2015 ordinance, but rather on the terms of the operative agreement.[3]

Of course, Harrington need not prove a "present contractual interest in a particular project" to challenge the constitutionality of a zoning ordinance. *Warth*, 422 U.S. at 508 n.18. But to establish standing, he must demonstrate a causal relationship between the County's 2015 zoning ordinance and the injuries alleged. *Id.* at 504. And as noted above, this requires a showing that absent the restrictive zoning ordinance, "there is a substantial probability that [he] would have been able to purchase or lease" in the area subject to the ordinance. *Id.* at 503. Without more, the Court is unable to infer that such causal relationship exists.

But Harrington also asserts facial challenges to the 2015 ordinance, suggesting that his purported injury extends beyond the option contract discussed above. On this point, Harrington contends that provisions of the ordinance are vague and overbroad, and that as a result, he and others are unable to engage in certain constitutionally protected activities. He further argues that, given the nature of these challenges, the requirement to show standing should be relaxed. After all, he writes, challenges to overly-broad

---

[3] Even assuming otherwise, it is not clear why Harrington would be "required to relinquish" the agreement as a result of the 2015 ordinance. Filing 57 at 2. Indeed, unlike the 2007 ordinance, the 2015 resolution expressly permitted adult entertainment venues in C-2 commercial districts. *See* filing 57-3 at 10. And, as noted above, Harrington's proposed building was located in a C-2 highway commercial district. *See* filing 57-2 at 2.

statutes are "not primarily for the benefit of the litigant, but for the benefit of society[.]" Filing 60 at 5 (citing *Linc-Drop, Inc. v. City of Lincoln*, 996 F. Supp. 2d 845, 853 (D. Neb. 2014)). Ultimately, Harrington "demand[s] that all vague and overbroad definitions and prohibitions in Defendant Seward County's 2015 zoning resolution be enjoined and declared unconstitutional." Filing 57 at 26 (emphasis omitted).

But as Harrington knows well, challenging an ordinance based on vagueness or overbreadth does not, itself, excuse or obviate the requirement of constitutional standing. *See*, *Harrington v. Hall County Bd. of Supervisors*, 2016 WL 1274534, at *13 (D. Neb. 2016); *Harrington v. Hall County Nebraska*, 2016 WL 3950745, at *3 (D. Neb. 2016). Rather, Article III standing is required no matter the claim, and for present purposes, it requires that Harrington demonstrate "a harm fairly traceable to conduct (or anticipated conduct) by the [County]." *Dolls, Inc. v. City of Coralville*, 425 F. Supp. 2d 958, 979 (S.D. Iowa 2006). In other words, as the Court in *Dolls* summarized,

> [I]f a statute has not been applied, one of two types of injuries must be alleged. First, the plaintiff must have "alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by [the] statute, and there [must] exist[] a credible threat of prosecution." Alternatively, a plaintiff must be "chilled from exercising [its] right to free expression or forego[] expression in order to avoid enforcement consequences." In either situation, there must exist an actual threat that the challenged ordinances would be applied if the plaintiff exercised its right to free expression.

*Id.* at 979-80 (citing *Ramirez v. Sanches Ramos*, 438 F.3d 92, 98 (1st Cir. 2006) (internal citations omitted)).

Applying these principles, Harrington has failed to establish standing over his constitutional challenges to the 2015 ordinance. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (the burden lies with the party asserting jurisdiction). Indeed, as noted above, Harrington has not alleged a current or potential property interest in Seward County—much less a desire to return.[4]

---

[4] In an apparent attempt to remedy this deficiency, Harrington, in his brief in response to the motion to dismiss, writes: "Plaintiffs would still like to purchase the subject property if Defendant's unconstitutional zoning resolution and amendments are enjoined from enforcement." Filing 60 at 3-4. But again, this language appears nowhere in the amended complaint, and it is not—without more—the type of affirmative factual allegation required in an Article III standing analysis. *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231

Nor has he sufficiently alleged an intention to engage in conduct prohibited by the provision, or some other present and realistic danger of "sustaining a direct injury as a result of [the law's] operation or enforcement." *Phelps-Roper*, 697 F.3d at 687. Accordingly, Harrington's constitutional challenges to the 2015 ordinance will be dismissed without prejudice.

### *(ii) 2007 Ordinance*

Harrington also challenges provisions of the 2007 ordinance, which has since been amended by the County's 2015 resolution. Specifically, Harrington alleges that the 2007 zoning ordinance effectively bans all sexually oriented businesses by "prohibit[ing] Adult Establishments in over 99.9% of Seward County[.]" Filing 57 at 2-3, 16. He further contends that an hours of operation provision—which requires adult businesses to close from 12:00 a.m. to 6:00 a.m.—amounts to a unlawful prior restraint. Filing 57 at 15, 19. He seeks an order "declaring that the [2007 ordinance] is unconstitutional with regard to the restrictions of sexually oriented businesses." Filing 57 at 32. The County argues that Harrington's claims are moot. *See* filing 59 at 10.

Various doctrines—including the doctrine of mootness—"provide the tools used to determine whether a plaintiff presents a justiciable case or controversy." *McCarthy v. Ozark School Dist.*, 359 F.3d 1029, 1035 (8th Cir. 2004). Mootness has been characterized as "the doctrine of standing set in a time frame[,]" *Doe v. LaFleur*, 179 F.3d 613, 615 (8th Cir. 1999), and is therefore akin to the doctrine of standing. *Ali v. Cangemi*, 419 F.3d 722, 723-24 (8th Cir. 2005). Thus, courts lack jurisdiction over cases in which "due to the passage of time or a change in circumstances, the issues presented . . . will no longer be 'live' or the parties will no longer have a legally cognizable interest in the outcome of the litigation." *Van Bergen v. State of Minn.*, 59 F.3d 1541, 1546 (8th Cir. 1995) (quoting *Arkansas AFL-CIO v. F.C.C.*, 11 F.3d 1430, 1435 (8th Cir. 1993)).

When a law or ordinance has been amended or repealed, actions seeking declaratory or injunctive relief for earlier versions are generally moot. *Phelps-Roper,* 697 F.3d at 687. An exception to this rule applies, however, where the case is "capable of repetition yet evad[es] review," *McCarthy,* 359 F.3d at 1036, or where there is a "reasonable expectation the wrong will be repeated." *Missouri Protection and Advocacy Servs., Inc. v. Carnahan,* 499 F.3d 803, 811 (8th Cir. 2007). Here, even assuming that the 2007 ordinance effectively banned adult venues, those restrictions have been

---

(1990) (It is a long-settled principle that standing cannot be "inferred argumentatively from averments in the pleadings, but rather must affirmatively appear in the record. . . . Thus, petitioners . . . must allege . . . facts essential to show jurisdiction.") (internal quotation marks and citations omitted).

lifted, and Harrington does not allege an ongoing harm. Nor is there an indication that the County will reenact the 2007 ordinance, or that it is operating under the repealed provisions. *See*, *Traditionalist American Knights of the Ku Klux Klan v. City of Desloge*, 2016 WL 705128, \*2 (E.D. Mo. 2016); *Plisner v. Sweeney*, 2007 WL 474964, at \*4 (D. Minn. 2007). Accordingly, count 1 of Harrington's amended complaint (at least as it pertains to the 2007 ordinance) will be dismissed as moot. *See* filing 57 at 16.

But at least one provision—the requirement that adult establishments close from 12:00 a.m. to 6:00 a.m.—appears in both the 2007 and 2015 ordinances. *Compare* filing 53-5 at 71, *with* filing 53-4 at 8. So, contrary to the County's contention, it cannot be said that the alleged misconduct has permanently ceased or is unlikely to be repeated. *See Comfort Lake Ass'n, Inc. v. Dresel Contracting, Inc.*, 138 F.3d 351, 354 (8th Cir. 1998). But as alluded to above, a case may also become moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (internal quotation marks omitted). And here, for the reasons discussed above, the Court is not convinced that Harrington has a legally cognizable interest in the remedy he requests (that is, the enjoinment of the hours of operation provision).

More fundamentally, though, the Court is unable to determine how—or if—Harrington was injured by the provision of the 2007 ordinance at issue. Indeed, while Harrington alleges a desire to "assemble and hold parties and events" in the County after midnight, there is no evidence that he was denied a permit or variance under the 2007 ordinance generally, or pursuant to the hours of operation provisions specifically. Nor does he contend that he tried, but was prevented, from entering or opening a similar establishment during the restricted hours of operation.

And even if the Court were to assume that such injury exists, there is no indication that prospective relief "will remove the harm" identified. *Warth*, 422 U.S. at 505. As noted throughout, Harrington does not own—nor sufficiently allege an intention to own—property in the County, such that he would "benefit in a tangible way from the court's intervention." *Id.* 508. Thus, absent the necessary allegations of demonstrable, particularized injury and redressability, there "can be no confidence of a real need to exercise the power of judicial review[.]" *Id.* (internal quotation marks omitted). Thus, to the extent that Harrington challenges the hours of operation restriction in the 2007 ordinance, that claim will be dismissed without prejudice.

B. THE REZONING AND CONDITIONAL USE APPLICATIONS

Harrington's remaining claims challenge the sufficiency and legality of the process by which the County (1) handled Harrington's rezoning and conditional use applications, and (2) adopted the 2015 ordinance. Specifically, and as noted above, Harrington alleges that the County improperly delayed adjudication of his requests, held secret meetings without proper notice, accepted false and misleading evidence at public meetings, and failed to follow procedures set forth in the 2007 ordinance. As a result of this conduct, Harrington contends that he was deprived of a property interest in violation of the Fifth and Fourteenth Amendments. He also alleges that the County, in failing to provide sufficient notice of public meetings, violated Nebraska's open meetings law.

1. DUE PROCESS

Harrington alleges that the County, in engaging in the conduct described above, violated his Fourteenth Amendment due process rights. Filing 57 at 26. But in asserting this allegation, he neither identifies the property or liberty interest at issue, nor clarifies whether his claim is procedural or substantive in nature (or both). Nevertheless, the Court construes Harrington as alleging a violation of procedural due process premised on a purported property interest in (1) the option contract, and (2) rezoning under the 2007 ordinance.[5]

To assert a claim for a violation of procedural due process, the plaintiff must allege "(1) he had a life, liberty, or property interest protected by the Due Process Clause; (2) he was deprived of this protected interest; and (3) the state did not afford him adequate procedural rights prior to depriving him of the property interest." *Stevenson v. Blytheville Sch. Dist. #5*, 800 F.3d 955, 965-66 (8th Cir. 2015).

The County urges dismissal, arguing that Harrington lacks a protected property interest. *See* filing 59 at 38. A plaintiff has "a constitutionally cognizable property interest in a right or a benefit" if he has "a legitimate claim of entitlement to it." *Stevenson,* 800 F.3d at 967-68 (internal quotations

---

[5] The Court acknowledges Harrington's passing references to substantive due process in his response to the County's motion to dismiss. *See* filing 60 at 59. But that claim is not specifically pled in the complaint. Besides, even assuming that the zoning process is "expensive, complex, wasteful, unfair, and arbitrary," that itself is not enough. *See* filing 57 at 26-27. Rather, due process claims involving local land use decisions must demonstrate that the government action is "truly irrational, that is something more than . . . arbitrary, capricious, or in violation of state law. The action must therefore be so egregious or extraordinary as to shock the conscience." *Koscielski v. City of Minneapolis*, 435 F.3d 898, 902 (8th Cir. 2006) (internal quotation marks and citation omitted).

- 10 -

omitted) (quoting *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)). To have a legitimate claim of entitlement to a benefit, "a person clearly must have more than an abstract need or desire and more than a unilateral expectation of it." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) (internal quotations omitted). The Due Process Clause itself does not create such entitlements; rather, they arise "from an independent source such as state law." *Id.*

As noted above, the Court construes Harrington as alleging an entitlement to the County's approval of his application for rezoning. But nothing in the County's 2007 ordinance entitled Harrington to believe that the County *would*—much less *must*—*approve* his application. *Walker v. City of Kansas City*, 911 F.2d 80, 94 (8th Cir. 1990). Thus, the County was not, as a constitutional matter, obligated to afford Harrington any particular process. *Id.* at 94-95. And Harrington cannot overcome this analysis with vague references to a zoning administrator's "assurances" that his application, if submitted, would be approved. Even assuming the truth of that allegation, the rezoning petition was to be decided by the County Board of Commissioners after recommendations of the planning commission. *See*, filing 62 at 13; filing 57-4 at 34, 117. Thus, the unilateral statements of a zoning official who had no authority to grant the rezoning petition cannot—and did not—form a "legitimate claim of entitlement" necessary to state a due process claim.[6]

The Court further construes Harrington as alleging a property interest in his option contract, which the County purportedly deprived him of through, among other means, unnecessary delay. But that claim fails for similar reasons. As noted above, Harrington's option contract was premised on securing County approval of his rezoning and conditional use permits. And because Harrington had no legitimate expectation of entitlement to rezoning or conditional use, it follows that he did not have a constitutionally protected interest in exercising his option to purchase the property. *See Smith-Berch, Inc. v. Baltimore County*, 68 F. Supp. 2d 602, 628 (D. Md. 1999) (finding no property interest when lease was allegedly "forcibly forfeited" because the contingency of local zoning permission to operate the desired business was denied).

As a final matter, even assuming the existence of a property interest, the nature of Harrington's due process claim is unclear. While Harrington claims, for example, not to have received proper notice of a June 22 meeting,

---

[6] In any event, Harrington's allegations regarding these alleged assurances are conclusory at best. And his attempt to remedy this deficiency by attaching an affidavit to his response brief is unavailing. *See* filing 61-1.

- 11 -

public records suggest otherwise. *See*, filing 60 at 32; filing 59-14. To this end, the Court has reviewed public notices that were published in local newspapers in the weeks prior to the commission's meeting. *See* filing 59-14 at 17, 18. And more to the point, the publicly-available transcript of the meeting shows that Harrington and his attorney were not only in attendance at the June 22 meeting, they presented at it. *See* filing 57-10 at 21. Thus, it is unclear what additional notice Harrington claims he was due. *See Anderson v. Douglas County*, 4 F.3d 574, 578 (8th Cir. 1993) ("In the zoning context, assuming a landowner has a protectable property interest, procedural due process is afforded when the landowner has notice of the proposed government action and an opportunity to be heard."). Accordingly, the County's motion to dismiss Harrington's due process claim is granted.

## 2. TAKINGS

Harrington next contends that the County's conduct with respect to rezoning and conditional use applications "constitute[s] a taking of property without due process of law."[7] Filing 57 at 29. To support this contention, Harrington reiterates his argument that the County improperly delayed his applications, and claims more generally that the County denied him all "economically viable use of (the) land." Filing 60 at 47-48. The County argues that Harrington's takings claim is not ripe for review. Filing 59 at 41.

A takings claim must be ripe in two different respects. First, the government entity charged with implementing the regulations must have "reached a final decision regarding the application of the regulations to the property at issue." *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 186 (1985). A "final decision" requires the submission of all relevant plans and includes the opportunity to grant any variances or waivers allowed by law. *Id.* Second, the claimant must "seek compensation through the procedures the State has provided for doing so." *Id.* at 194 n.13; *see Koscielski v. City of Minneapolis*, 435 F.3d 898, 903-04 (8th Cir. 2006).

As an initial matter, the Court is not convinced by Harrington's contention that, as the prior holder of an option, he possesses a constitutionally protected property right for purposes of Fifth Amendment takings jurisprudence. *See Phillips Petroleum Co. v. City of Omaha*, 106 N.W.2d 727, 736 (Neb. 1960) (an option agreement "does not create an interest or estate in real estate or personal property"); *Phillips v. Washington Legal Foundation*, 524 U.S. 156, 164 (1998) (property interests under the

---

[7] Fifth Amendment takings jurisprudence concerns just compensation, not due process, but Harrington frequently combines the two in his amended complaint and accompanying briefing.

Fifth Amendment determined by reference to state law). But even assuming that he does, his claim is unripe. Indeed, Harrington has not adequately pursued available state law remedies, such as the filing of an inverse condemnation action. *See Strode v. City of Ashland,* 886 N.W.2d 293, 303-04 (Neb. 2016) (recognizing the availability of inverse condemnation actions for regulatory takings); *see also Koscielski,* 435 F.3d at 903-04 (finding a takings claim unripe where the claimant failed, among other matters, to pursue an inverse condemnation action in state court). Accordingly, because Harrington has not exhausted potential state law remedies, his Fifth Amendment claim will be dismissed.

### 3. OPEN MEETINGS ACT

Harrington has also asserted a separately-pled state law claim against the County for an alleged violation of Nebraska's public meetings law. Specifically, Harrington alleges that the County held "several public meetings between July and September 2015" without providing him sufficient notice. Filing 57 at 31. At these meetings, Harrington says, the County inappropriately published Harrington's "minor criminal misdemeanor history" and otherwise permitted residents to offer "hearsay testimony regarding the negative effects of sexually oriented businesses[.]" Filing 57 at 31. In addition to monetary damages, Harrington "demand[s] that the portions of the Public Meetings regarding Plaintiffs held between July and September 2015 be voided[.]" Filing 57 at 31.

The Court recognizes that it may continue to exercise supplemental jurisdiction over those claims. *See*, 28 U.S.C. § 1367(a) and (c); *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639-40 (2009). But this Court may also decline to do so where "the district court has dismissed all claims over which it has original jurisdiction." § 1367(c)(3). Having considered Harrington's state law claims against the County, and factors such as judicial economy, convenience, fairness, and comity, *see Glorvigen v. Cirrus Design Corp.*, 581 F.3d 737, 749 (8th Cir. 2009), the Court declines to exercise supplemental jurisdiction. Accordingly, Harrington's remaining claim will be dismissed without prejudice to its reassertion in state court. *See* 28 U.S.C. § 1367(d).

IT IS ORDERED:

1. The County's motion to dismiss (filing 58) is granted. Specifically,

      a. Harrington's constitutional challenges to the 2007 and 2015 ordinances are dismissed without prejudice.

      b. Harrington's due process claim is dismissed.

      c. Harrington's takings claim is dismissed without prejudice.

      d. Harrington's state law claim is dismissed without prejudice to its reassertion in state court.

2.    A separate judgment will be entered.

Dated this 22th day of March, 2017.

                      BY THE COURT:

                      /s/ John M. Gerrard
                      John M. Gerrard
                      United States District Judge